UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECEIVED

JUN 20 2000

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MR. JOHNNIE WALTON SR. # N-01532     ET AL.

_____

_____

(Enter above the full name of the
plaintiff or plaintiffs in
this action)

## 00C 3909

vs.

THE HON. JUDGE RALPH REYNA     ET AL.

JIM THOMPSON     ESQUIRE

RICHARD DIVINE     STATE'S ATTORNEY

THOMAS R. FITZGERALD     CHIEF JUDGE

(OTHER NAMED DEFENDANTS ON PAGE  1-A )

(NAMES AND ADDRESSES IN APPENDIX)

_____

(Enter above the full name of the
defendants in this action)

Case No:
(To be supplied by the
Clerk)

JUDGE RONALD GUZMAN

Mag. Jol Brown

DOCKETED

JUN 29 2000

COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983 U.S.C.

I.    Previous Lawsuits:

    A.    Have you begun other lawsuits in state or federal court?

                                                    YES (XXX)   NO (   )

    B.    If your answer is yes, did any of these lawsuits deal
          with the same facts involved in this action or otherwise
          related to your claim?

                                                    YES (XXX)   NO (   )

    C.    If your answer to B is yes, describe each lawsuit in the
          space below.   (If there is more that one lawsuit,
          describe the additional lawsuits on another piece of
          paper, using the same outline.)

1

IN THE
UNITED STATES DISTRICT C RT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
|  | ) |  |
| WALTON # N-01532 | ) |  |
|  | ) |  |
| et al. | ) |  |
| PLAINTIFF, | ) |  |
| AND PLAINTIFF CLASS, | ) |  |
|  | ) |  |
|  | ) |  |
| -VS- | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| THE HON. RALPH REYNA    et al. | ) |  |
| JIM THOMPSON  ESQUIRE | ) | CASE NO._____ |
|  | ) |  |
| RICHARD DIVINE | ) |  |
|  | ) |  |
| THOMAS R. FITZGERALD | ) |  |
|  | ) |  |
| THE HON. STAURT E. PALMER | ) |  |
|  | ) |  |
| THE HON. LEO H. HOLT | ) |  |
|  | ) |  |
| THE HON. DENNIS J. PORTER | ) |  |
|  | ) |  |
| THE HON. JAMES D. EGAN | ) |  |
|  | ) |  |
| THE HON. MICHAEL P. TOOMIN | ) |  |
|  | ) |  |
| THE HON. MICHAEL P. BOLAN | ) |  |
|  | ) |  |
| THE HON. FRED G. SURIA | ) |  |
|  | ) |  |
| THE HON. VINCENT M GAUGHAN | ) |  |
|  | ) |  |
| THE HON. BERTINA E. LAMPKIN | ) |  |

( 1-A )

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ( DEFENDANTS CONTINUED ) | ) |
| | ) |
| | ) |
| THE HON. JOHN J. MORRISSEY | ) |
| | ) |
| THE HON. DANIEL J. KELLY | ) |
| | ) |
| THE HON. JOHN J. MORAN | ) |
| | ) |
| THE HON. JAMES M. SCHREIER | ) |
| | ) |
| THE HON. COLLEEN McSWEENEY-MOORE | ) |
| | ) |
| THE HON. DANIEL P. DARCY | ) |
| | ) |
| THE HON. SHELVIN SINGER | )   CASE NO._____ |
| | ) |
| THE HON. JOHN J. MANNION | ) |
| | ) |
| THE HON. WILLIAM J. HIBBLER | ) |
| | ) |
| THE HON. BARBARA J. DISCO | ) |
| | ) |
| ***  NAMED DEFENDANTS *** | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

( A COPY OF COMPLAINT SHOULD BE SERVED ON EACH NAMED DEFENDANT )

( 1-B )

1.    Parties to this previous lawsuit:

Plaintiffs:    JOHNNIE WALTON    AND OTHER NAMED PLAINTIFFS

NAMES AND ADDRESSES UNKNOWN AT THIS TIME.

LIST ALL ALIAS'S    NONE

Defendants:    SHERIFF OF COOK COUNTY   (COOK COUNTY DEPARTMENT

OF CORRECTIONS)  COOK COUNTY, CHICAGO ILLINOIS

2.    Court (if federal court, name the district; if state court
       name the county):  U.S. DISTRICT COURT   NORTHERN DISTRICT

3.    Docket number:    (UNKNOWN AT THIS TIME)

4.    Name of judge to whom case was assigned:   (UNKNOWN)

5.    Disposition (for example:  Was the case dismissed:  Was it
       appealed?  Is it still pending?)    SETTLED

CASE SETTLED IN 1994

6.    Approximate date of filing lawsuit:    (1993)

7.    Approximate date of disposition:    (1994)

2

II. Place of present confinement: JOLIET CORRECTIONAL CENTER

P.O. BOX 515 (1125 COLLINS STREET) JOLIET, ILLINOIS 60432

A. Is there a prisoner grievance procedure in this institution?

YES (XXX)    NO (   )

B. If the facts in your complaint related to your imprisonment, did you use the prisoner grievance procedure to seek relief?

YES (   )    NO (XXX)

C. If your answer is **YES**:

1. What steps did you take?    NONE

THIS IS A MATTER OF DISCRIMINATORY ENFORCEMENT OF AN LAW BY

CIRCUIT COURT OF COOK COUNTY JUDGES AND PROSECUTORS AND SUPREME

COURT JUSTICES.

2. What was the result?    NONE

THIS IS A MATTER OF UNCONSTITUTIONALLY ENFORCED DISCRIMINATORY

LAW BASED ON "RACE" AND "COLOR".

D. If your answer is **NO**, explain why not:    THIS IS A

CLASS ACTION COMPLAINT AGAINST "NAMED" AND "UNNAMED" CIRCUIT

COURT JUDGES AND PROSECUTORS, AND SUPREME COURT JUSTICES.

3

III. Parties:
(In item **A** below place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

~~Name of plaintiff(s)~~   Mr. Johnnie Walton # N-01532 et. al.

Joliet Correctional Center   P.O. Box 515 (1125 Collins St.)

Address _____ Joliet, Illinois 60432-0515 _____

ALL ADDITIONAL PLAINTIFFS ARE UNDER SEPARATE COVER IN APPENDIX

(In item **B** below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item **C** for the name, positions, and place of employment of the additional defendants.)

B.   Defendant   The Hon. Ralph Reyna   et. al. is employed as

Criminal Court Judge _____ at   Criminal Court Building

2650 So. California Ave.   Chicago, Illinois   60608

C.   Additional Defendants: _____

ALL ADDITIONAL DEFENDANTS ARE UNDER SEPARATE COVER

IN *APPENDIX*   AS THE ADDITIONAL DEFENDANTS ARE

NUMEROUS, AS ARE THE PRESENT AND FORMER DEFENDANTS

(~~SEE~~ APPENDIX ATTACHED)

IV.   Statement of claim:

State here as briefly as possible the facts of your case. Describe precisely how each defendant is involved. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach an extra sheet(s) if necessary.)

STATEMENT OF CLAIM I.

(STATEMENT OF CLAIM IS CONTINUED ON PAGE 4-A)

4

( PAGE 4-A )

## STATEMENT OF CLAIM

This is a "Revised Class Action Complaint" for injunctive relif and damages, specifically against "named and unnamed" "Cook County Criminal Court Judges", "Present and Former State's Attorneys of Cook County, "Appellate and Illinois Supreme Court Justices, named and unnamed, and various individuals who have participated in "The Discriminatory Enforcement of Law based on Race".

NOW COMES THE PLAINTIFF AND PLAINTIFF CLASS BY AND THROUGH THEMSELVES PRO.SE. PURSUANT TO THEIR "CLASS ACTION COMPLAINT" AGAINST THE DEFENDANTS, "NAMED AND UNNAMED", AND STATES AS FOLLOWS:

## NATURE OF ACTION

This is an "Action" brought on behalf of "State Prisoners" who are "African American, Black or Hispanic", who under the "Color of Law", were subjected by numerous "named and unnamed" "Cook County Criminal Court Judges", and various State's Attorneys "present and former" to the "Discriminatory Enforcement of the Law", to wit; THE HABITUAL CRIMINAL STATUTE: (ILL. REV. STAT. CH. 38, PAR. 33-B (1))(1979) in which the defendants "deliberately and knowingly" applied an unjustifiable standard in selecting offenders for prosecution under the Habitual Criminal Act; (Class X House Bill 1500), which calls for the imposition of "Mandatory Sentences of Natural Life imprisonment.

( PAGE 4-B )

The "Class of People" being selected for the imposition of
the "HABITUAL CRIMINAL ACT", were chosen based on "Race and
____", (Black and Hispanic) and the "Defendants" named and
unnamed, chose not to "Equally Enforce such a "Mandatory Sentencing"
against an unmistakeably large percentage of "White or European"
offenders convicted of committing similar or worse offenses.
(SEE STATISTICAL EXHIBITS ATTACHED)

This "Discriminatory Action" is in clear violation of the
"UNITED STATES CONSTITUTION", and the "Plaintiff's Constitutional
Rights".


## JURISDICTION AND VENUE


This "Action" seeks "Monetary Damages and Injunctive Relief"
for the violations of the Rights, Priviledges, and Immunities
secured under the Eighth, Fifth, and Fourteenth Amendments of the
UNITED STATES CONSTITUTION, and Title 42 U.S.C. §1983, and §1985.
This "Action" does not seek the release of the "Plaintiff or
Plaintiff Class".

The Jurisdiction of this Court arises under "Title 28
U.S.C. §1343 and 28 U.S.C. §1331. Venue is proper in the "NORTHERN
DISTRICT OF ILLINOIS, EASTERN DIVISION", since the "Acts and
Transactions" complained of herein, all occured within this
District.

The Plaintiffs and Plaintiff Class also invokes the "Pendent
Jurisdiction" of this Court.

( PAGE 4-C )

All "Defendants" were acting at all times under "Color of State Law", and deprived the "Plaintiffs" of their Constitutional Rights, Privileges and Immunities, as secured by the UNITED STATES CONSTITUTION.

## CLASS ACTION ALLEGATIONS

(A)  The Plaintiffs bring this "Action as a Class Action" pursuant to Rule 23 (b)(2) and Rule 23 (b)(3) of the Federal Rules of Civil Procedure.

(B)  The "Class" consists of all "African-American, (Black) and "Hispanic Males, that were subjected to the "Discriminatory Enforcement of Law", in which the "Defendants deliberately and knowingly applied an unjustifiable standard in selecting offenders for prosecution under the "HABITUAL CRIMINAL STATUTE" (Ill. Rev. Stat. Ch. 38, par. 33-B-1) which calls for the imposition of a "Mandatory Natural Life Sentence".

(C)  The "Plaintiffs" were chosen because of their "Race and Color", and the "Defendants" deliberately chose not to equally enforce the "HABITUAL CRIMINAL STATUTE" against similarly and like situated "European-White" Males, accused of committing similar or worse offenses. (Class-X Repeat Offenders)

( PAGE 4-D )

(D)  The "Class" is so numerous, that joinder of all persons is impractical.  The Plaintiffs are informed to believe that most of the "African-American" (Black) andf "Hispanic" Males in the State of Illinois, and the Northern District, and probably those detained convicted and sentenced in other Districts, were subjected to the "Discriminatory Enforcement" of Law, as described above.

BASED UPON THE INFORMATION GATHERED, THE PLAINTIFFS AND PLAINTIFF CLASS WILL BE WELL INTO THE THOUSANDS.

(E)  This Honorable Court should "appoint counsel" for the Plaintiffs, to "fairly and adequately protect the interests of all Class Members", as they are members of the Class and their claims are the typical claims of "All Class Members".

(F)  The "Plaintiff's interest in obtaining the "injunctive relief" and "monetary damages" for the violations of the Plaintiff's Constitutional Rights and Priviledges are consistent with and not antagonistic to those of any persons within the Class.

THE COMMON QUESTIONS OF LAW AND FACT PREDOMINATES OVER QUESTIONS AFFECTING INDIVIDUAL CLASS MEMBERS.

(1)  A "Class Action" is superior to other available methods for the "fair and efficient" adjudication of the controversy in that:

(a)  A multiplicity of suits with consequential burden on the Courts and Defendants should be avoided.

( PAGE 4-E )

(b)  It would be virtually impossible for "All Class Members" to intervene as "Parties-Plaintiffs" individually in this action.

(c)  Upon adjudication of "Defendant's Liability", claims of the Class Members can fairly be determined by this Honorable Court.

(d)  The "Constitutional Questions" can be answered and determined for the "Defendants and Plaintiffs" alike by this Honorable Court, in a single "Class Action" rather than in individual claims, that can put a burden on the Court.

THE COMMON QUESTION OF "LAW AND FACT" INCLUDE:

(1)  Whether the Defendants practiced the "Discriminatory Enforcement" of Law, against "African-American (Black) and Hispanic Males, on the basis of "Race" by sentencing such people to "Mandatory Life Sentences", under the cover of the "HABITUAL CRIMINAL STATUTE"; (Ill. Rev. Stat. Ch. 38, par. 33-B-1) but not equally enforcing the law against similarly situated "European-White" Males.

(2)  Whether the conduct alleged herein is in violation of the "Eighth", "Fifth", and "Fourteenth" Amendments of the UNITED STATES CONSTITUTION, and Title 42 U.S.C. 1983 and 1985 (3).

(3)  Whether the Plaintiffs and Memebers of the Plaintiff Class are entitled to "injunctive relief", and an award of "nominal compensatory and punitive damages".

( PAGE 4-F )

# WRONGFUL CONDUCT ALLEGED

The "Wrongful Conduct" alleged herein has been conducted
generally upon "all members of the Plaintiff Class", in that the
"Systematic Discriminatory Enforcement" of Law against "African-
American" (Black) and Hispanic" Males, were conducted pursuant to
a "long-established, calculated plan, policy, or procedure, of
the specified "Judges and State's Attorneys" (present and former)
of the CIRCUIT COURT OF COOK COUNTY, ILLINOIS, First Judicial
Circuit, Criminal Division.

## HISTORY OF WRONGFUL CONDUCT

"ALL NAMED AND UNNAMED DEFENDANTS WERE AWARE OF EXISTING STATISTICAL
EVIDENCE OF THE DISCRIMINATORY PRACTICES AND DISCRIMINATORY
ENFORCEMENT OF THE "HABITUAL CRIMINAL STATUTE", AGAINST AFRICAN-
AMERICAN, (BLACK) AND HISPANIC MALES, YET FAILED TO INVESTIGATE
AND/OR RESTRAIN FROM SUCH DISCRIMINATORY CONDUCT.

For at least "Twenty (20) Years", prior to and continuing
at the time of the filing of this complaint, the Defendants as
identified herein, have created, authorized, maintained, permitted
and enforced a policy and/or procedure in which most or all
African-American (Black) and Hispanic Males, faced with criminal
prosecution, were subjected to a discriminatory application of
the "HABITUAL CRIMINAL STATUTE; (Ill. Rev. Stat. Ch. 38, par. 33-
B-1) based on "Race and Color".

( PAGE 4-G )

Most specifically, the Defendants who are or were "prosecutors" selected cases where the "HABITUAL CRIMINAL STATUTE" would be applied according to "Race and Color", while "European White" Males faced with similar or worse situations continued to evade similar punishment at the hand of these present and former prosecutors

"Statistics show and prove a "systematic application" of the "HABITUAL CRIMINAL STATUTE", in a most discriminatory fashion. All Plaintiffs, because of their race and color had the Habitual Criminal Statute enforced against them, while "European White" Males similarly or worse situated were not recommended and sentenced under the "HABITUAL CRIMINAL STATUTE".

ALL "DEFENDANTS (NAMED AND UNNAMED JUDGES AND PROSECUTORS) HAVE INSTITUTED AND IMPLEMENTED POLICIES AND PROCEDURES IDENTIFIED ABOVE BY ENGAGING IN THE FOLLOWING ACTS AND PRACTICES TOWARD THE PLAINTIFFS AND PLAINTIFF CLASS.

(A)  African American (Black) and Hispanic Males are subjected to "unfair trials, where the prosecutors arbitrarily select them for the application of the "HABITUAL CRIMINAL STATUTE; (Ill. Rev. Stat. Ch. 38, par. 33-B-1) because of their "race and color".

(B)  The "Acts and Practices" described are engaged in by the Defendants with respect to African-American (Black) and Hispanic Males, while "European (White) Males are not subjected to the discriminatory enforcement of the law.
(EVEN WHERE AFRICAN-AMERICAN (BLACK) AND HISPANIC MALES WERE CONVICTED OF THE SAME OR LESSER OFFENSES)

( PAGE 4-H )

THE "ACTS AND PRACTICES" COMPLAINED OF AND DESCRIBED WERE
ENACTED, ENFORCED AND MAINTAINED WITH THE EXPRESS APPROVAL,
KNOWLEDGE, AUTHORIZATION, RATIFICATION, AND CONSENT OF THE "COOK
COUNTY CIRCUIT COURT ADMINISTRATION'S, "JUDGES AND PROSECUTORS"
OF COOK COUNTY.

The "Plaintiffs and Plaintiff Class" specifically allege that
these "Defendants" have been made aware of the "Discriminatory
Acts and Practices" complained of by virtue of earlier complaints
filed against the Defendants in this and other Courts, and the
Defendants continue to engage in and enforce these Discriminatory
Acts.

THE "DEFENDANTS" HAVE BREACHED THE "DUTY OF PROXIMATE CAUSE":

All Defendants have the "duty" to prevent any "Discriminatory
Applications of the Law", and most specifically, the "Unconstitutional
Application" of the law, that deprives a citizen of their rights
under the Constitution and Laws and Treaties of the United States.

All Defendants have failed in their "duties" to excersize
due diligence and equal protection of the law to "African-American
(Black) and Hispanic Males.

All of the "Practices, Policies, and Acts of the Defendants
continued unchanged for may years, even while the Defendants upon
information and belief, possessed and recorded "Statistical
Evidence", that inferred "The Discriminatory Enforcement" of the
"HABITUAL CRIMINAL STATUTE", against certain races of people.

(A)  The "Plaintiff and Members of the Plaintiff Class", are all male citizens of the "UNITED STATES", who were convicted and sentenced by the specified "Judges and Prosecutors" of the "CIRCUIT COURT OF COOK COUNTY, ILLINOIS, First Judicial Circuit, Criminal Division, for allegedly committing "Class-X" offenses and who were subjected to the "Discriminatory Enforcement" of the "HABITUAL OFFENDER LAW", on the basis of "Race and Color", while the Defendants did not sentence "similarly or worse situated "European (White) Males" to such Mandatory Terms of Natural Life Imprisonment".


## THE PARTIES

PLAINTIFF AND MEMBERS OF PLAINTIFF CLASS:

(1)  The "Plaintiff",  Johnnie Walton Sr. # N-01532  , is an inmate at the "JOLIET CORRECTIONAL CENTER, P.O. Box 515 Joliet, Illinois  60432-0515, and is a representative of the "Class", each of whom has been subjected to the "Discriminatory Enforcement" of the "HABITUAL CRIMINAL STATUTE"; (Ill. Rev. Stat. Ch. 38, par. 33-B-1) in a similar and like manner.

DEFENDANTS NAMED AND UNNAMED JUDGES AND PROSECUTORS:

(2)  The "Defendant",  Ralph Reyna  , et al. was at all times relevant to this complaint a "Criminal Court Judge", in the "CIRCUIT COURT OF COOK COUNTY, ILLINOIS, and the presiding judge and as such is and has been responsible for the "Discriminatory Enforcement" of the "HABITUAL CRIMINAL STATUTE;

(All other named and unnamed "Defendant Judges" are accused of similar conduct to that of Defendant "Ralph Reyna", and they too

( PAGE 4-J )

are judges of the "CIRCUIT COURT OF COOK COUNTY", accused of subjecting each representative and respective "Plaintiff and Member of The the Plaintiff Class, to the Discriminatory Enforcement of the "HABITUAL CRIMINAL STATUTE; and are identified further in the attached APPENDIX)

(3)  The Defendant,  Jim Thompson , (Esquire) is now in "private practice", but was a "Former Prosecutor and Governor of the State of Illinois", that enacted the "Discriminatory Practices of the "HABITUAL CRIMINAL STATUTE; (Ill. Rev. Stat. Ch. 38, par. 33-B-1) and most improtantly for signing this act into law.

(4)  The Defendant,  Richard Divine , is the current State's Attorney of Cook County, Illinois, and all named and unnamed "present and former State's Attorneys and Assistant State's Attorneys, were at all times relevant to this complaint, "prosecutors in the CIRCUIT COURT OF COOK COUNTY, ILLINOIS, First Judicial Circuit, Criminal Division, and as such is and has been responsible for the implementation, enforcement, and enactment of the unlawful "Discriminatory Enforcement" of the Habitual Criminal Statute; Including the policy, procedures and practices of selective prosecution, and Discriminatory Enforcement of the Habitual Criminal Statute, based upon "Race and Color".

The named and unnamed "State's Attorneys and Assistant State's Attorneys (Defendants) are responsible for maintaining the character competence, and integrity of the "State's Attorney's Office".

ALL NAMED AND UNNAMED PROSECUTORS ARE ACCUSED OF SIMILAR CONDUCT TO THAT OF DEFENDANT RICHARD DIVINE, AND ARE FURTHER IDENTIFIED IN THE APPENDIX.

( PAGE 4-K )

## CONSTITUTIONAL VIOLATIONS

THE PRACTICES AND ACTS OF THE NAMED AND UNNAMED DEFENDANTS VIOLATED THE RIGHTS OF THE PLAINTIFF AND MEMBERS OF THE PLAINTIFF CLASS, AS GUARANTEED THEM UNDER THE "EIGHTH, FIFTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, AND THEREFORE ARE VIOLATIVE OF "42 U.S.C. 1983 AND 42 U.S.C. 1985(3) BY DEPRIVING THE PLAINTIFF AND MEMBERS OF THE PLAINTIFF CLASS OF THE "EQUAL PROTECTION OF THE LAW".

(A)  THE PLAINTIFF AND MEMBERS OF THE PLAINTIFF CLASS WERE DEPRIVED OF "DUE PROCESS" AND "EQUAL PROTECTION RIGHTS" BY THE NAMED AND UNNAMED "JUDGES AND PROSECUTORS' DURING THEIR ACTUAL TRIALS, AND APPEALS, AND AS A DIRECT RESULT THEREOF, THE PLAINTIFF AND MEMBERS OF THE PLAINTIFF CLASS SUFFERED IRREPARABLE DAMAGES AND INJURIES.

In this matter, the "Discriminatory Enforcement" of the "HABITUAL CRIMINAL STATUTE" was conducted without reason other than "Race and Color", and thereby constituted an "unfair trial and sentencing hearing", in violation of the "Rights and Priviledges" of the Plaintiff and Members of the Plaintiff Class, as secured under the "Eighth, Fifth, and Fourteenth Amendment" of the UNITED STATES CONSTITUTION.

(B)  THE DISCRIMINATORY ENFORCEMENT OF LAW BY THE DEFENDANTS WITHOUT DUE PROCESS CONSTITUTED CRUEL AND UNUSUAL PUNISHMENT, AND A VIOLATION OF EQUAL PROTECTION OF THE LAW, AND IS A VIOLATION OF THE "EIGHTH, FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

( PAGE 4-L )

All "Defendants named and unnamed" conspired with, aided and abetted other named and unnamed Defendants in the application of the Discriminatory Enforcement of the Law, in gross violation of the rights and priviledges of the Plaintiff and Members of the Plaintiff Class, by providing assistance to such named and unnamed Defendants in carrying out the practices and policies of subjecting African-American (Black) and Hispanic Males to the Discriminatory Enforcement of the "HABITUAL CRIMINAL STATUTE; (Ill. Rev. Stat. Ch. 38, par. 33-B-1)

The practices, policies and acts of the Defendants were undertaken, aided, authorized, supervised and/or consented to by ech <u>named</u> and <u>unnamed</u> Defendant, with malice aforethought, and with willful and wanton desire to violate the rights of the Plaintiff and Members of the Plaintiff Class, with deliberate indifference and reckless disregard of the law, rights and priviledges of the Plaintiff and Members of the Plaintiff Class, as guaranteed under the "Eighth, Fifth and Fourteenth Amendment of the UNITED STATES CONSTITUTION.

## INJURIES

As a "Direct Result" of the Practices, Polices and Acts of the Defendants, the Plaintiff and Members of the Plaintiff Class, have suffered "<u>Severe Emotional</u> and <u>Psychological Damage</u> and <u>Distress</u>".

INJURIES CONTINUED:


The Plaintiff and Members of the Plaintiff Class have further suffered <u>Anguish</u>, <u>Anxiety</u>, <u>Monetary</u> <u>Loss</u>, <u>Injury</u>, and <u>Pain</u>, from the "Unconstitutional Application of Law, in such a Discriminatory Manner, as described by the deliberate and malicious misconduct of the Defendants.


## INJUNCTIVE RELIEF


Unless immediately and permanently enjoined from continuing to subject the Plaintiff and Members of the Plaintiff Class to this Discriminatory Enforcement of the Law, the Plaintiff and Members of the Plaintiff Class will continue to suffer gross violations of their Constitutional Rights, and Irreparable Injury for which the Plaintiffs have no adequate remedy of law.

Unless immediately and permanently enjoined from continuing to subject African-American (Black) and Hispanic Males to a Discriminatory Application of the "HABITUAL CRIMINAL STATUTE; the Defendants <u>will</u> <u>continue</u> to engage in the "willful, wanton and deliberate violation" of the Constitutional Rights of African-American (Black) and Hispanic Males, to be free from Cruel and Unusual Punishment and the unlawful Discriminatory Enforcement and Application of the "HABITUAL CRIMINAL STATUTE; (Ill. Rev. Stat. Ch. 38, par. 33-B-1)

( PAGE 5 )

## RELIEF  SOUGHT

THE PLAINTIFF AND MEMBERS OF THE PLAINTIFF CLASS PRAY THAT
THIS HONORABLE COURT WILL ENTER AN "ORDER" THAT:

(1)  That this "Action should proceed as a Class Action", under
Rule 23 of the Federal Rules of Civil Procedure, and appoint
counsel to "effective represent the Members of the Plaintiff
Class accordingly.

The Plaintiff and Members of the Plaintiff Class further
request tha appointment of counsel, due to the complexities of
the complaint and to protect the Members of the Plaintiff Class.

(2)  Preliminarly and Permanently restrain, enjoining and prohibiting
the Defendants from undertaking, enforcing, maintaining or adopting
any practices, policies or acts which will subject any person to
the Discriminatory Enforcement and Application of the "HABITUAL
CRIMINAL STATUTE; (Ill. Rev. Stat. Ch. 38, par. 33-B-1)

(3)  Award "Compensatory Damages"  to each Plaintiff and Member
of the Plaintiff Class against each Defendant jointly and separately
in the amount of "One Million Dollars ($1,000,000.oo) for the
"Emotional and Psychological Damages", the Severe Mental Anguish,
Anxiety, Pain, Humiliation, Degradation, and suffering of Body
and Mind, and Loss of Wages, and the pursuit of happiness.

( PAGE 5-A )

RELIEF SOUGHT CONTINUED:

(4) Award "Punitive Damages" to each Plaintiff and Members of
the Plaintiff Class, against each Defendant, jointly and separately
in the amount of "One Million Dollars" ($1,000,000.oo) for the
willful and wanton misconduct of the Defendants for their violation
of the Plaintiff and Members of the Plaintiff Class' Constitutional
Rights, and for the injuries previously stated together with such
other "Compensatory and Punitive Damages" as may be shown to
exist.

(5)  Award the Plaintiff and Members of the Plaintiff Class
their costs of the suit and their "Attorney Fees" under "Title 42
U.S.C. 1983; Merchandise Natl. Bank vs. Scanlon , (1980 1st
Dist.) 86 Ill. App. 3d 719,   41 Ill. Dec. 826,  408 N.E. 2d 248,
29 U.C.C.R.S. 1100.
Missouri et al. vs. Jenkins et al. , 491 U.S. 274,  109 S.Ct.
2463,  105 L. Ed. 2d 229 (U.S. 1989) IN RE: Hobbs, 108 B.R. 93
(Banker D.M.D. Nov. 20, 1989) 11 U.S.C. 330 (A)(1).

The Plaintiff and Members of the Plaintiff Class specifically
request that "All of the Named Defendants", under separate cover
in the Appendix be served with a copy of this "42 U.S.C. 1983
Complaint, and that the Plaintiff and Members of the Plaintiff
Class be apprised of all pending litigation and "status of the
Complaint".

ALL DEFENDANTS ARE BEING SUED IN THEIR "OFFICIAL AND INDIVIDUAL
CAPACITIES", AND HAVE VIOLATED CLEARLY ESTABLISHED CONSTITUTIONAL
LAW.

WHEREFORE, the Plaintiff, ___Johnnie Walton___, and Members of the Plaintiff Class pray that this Honorable Court will grant the relief sought, and appoint counsel, so that the plaintiff and Members of the Plaintiff Class may be afforded an opportunity to reach the merits of their claims.

Signed this _16th_ day of _June, 20 00_

_Johnnie E. Walton_ #N1-01532
(signature of plaintiff or plaintiffs)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___6-16-2000___
           (Date)

_Johnnie Walton_
(Signature)

# N-01532
(I.D. Number)

P.O. BOX 515 (1125 COLLINS ST.)
           (Address)
JOLIET, ILLINOIS 60432-0515

PRO.SE.

6

# A P P E N D I X

PLAINTIFF   AND   PLAINTIFF CLASS

NAMED DEFENDANTS AND ADDRESSES

STATISTICS   AND   "HISTORICAL FACTS ABOUT CASE

MOTION FOR APPOINTMENT OF COUNSEL TO PROTECT CLASS

MOTION/APPLICATION TO PROCEED IN FORMA PAUPERIS

SIX MONTH TRUST FUND LEDGER

AFFIDAVITS

EXHIBITS

# PLAINTIFFS

MR. JOHNNIE WALTON SR. # N-01532

JOLIET CORRECTIONAL CENTER

P.O. BOX 515   (1125 COLLINS  ST.)

JOLIET, ILLINOIS  60432-0515

                              et al.


PLAINTIFF CLASS ****


ALL OTHERS WHO ARE IDENTICALLY OR SIMILARLY SITUATED

THAT HAVE BEEN "DISCRIMINATED AGAINST" BY THE NAMED AND UNNAMED

DEFENDANTS, WHO HAVE "DISCRIMINATELY APPLIED THE HABITUAL OFFENDER

STATUTE BECAUSE OF "RACE AND COLOR".

## DEFENDANTS

NAMED DEFENDANTS:

(1)  THE HON. RALPH REYNA
     CIRCUIT COURT OF COOK COUNTY
     COUNTY DEPARTMENT   CRIMINAL DIVISION
     CRIMINAL COURT BUILDING    ROOM #
     2650 SO. CALIFORNIA AVE.
     CHICAGO, ILLINOIS  60608

                                    et al.

(2)  JIM THOMPSON   "ESQUIRE"
     ATTORNEY-AT-LAW
     WINSTON & STRAWN   LAW FIRM
     35 WEST WACKER DRIVE
     CHICAGO, ILLINOIS    60601

(3)  THE HON. THOMAS R. FITZGERALD
     CHIEF JUDGE
     CIRCUIT COURT OF COOK COUNTY
     COUNTY DEPARTMENT   CRIMINAL DIVISION
     CRIMINAL COURT BUILDING    ROOM #
     2650 SO. CALIFORNIA AVE.
     CHICAGO, ILLINOIS    60608

(4)  RICHARD DIVINE
     COOK COUNTY "STATE'S ATTORNEY"
     500 RICHARD J. DALEY CENTER
     CHICAGO, ILLINOIS    60602

(5)  THE HON. STUART E. PALMER
     CIRCUIT COURT OF COOK COUNTY
     COUNTY DEPARTMENT   CRIMINAL DIVISION
     CRIMINAL COURT BUILDING    ROOM #
     2650 SO. CALIFORNIA AVE.
     CHICAGO, ILLINOIS    60608

(DEFENDANTS CONTINUE)

NAMED DEFENDANTS:

(6) THE HON. LEO H. HOLT
CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT  CRIMINAL DIVISION
CRIMINAL COURT BUILDING    ROOM # 201
2650 SO. CALIFORNIA AVE.
CHICAGO, ILLINOIS    60608

(7) THE HON. DENNIS J. PORTER
CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT  CRIMINAL DIVISION
CRIMINAL COURT BUILDING    ROOM # 205
2650 SO. CALIFORNIA AVE.
CHICAGO, ILLINOIS    60608

(8) THE HON. JAMES D. EGAN
CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT  CRIMINAL DIVISION
CRIMINAL COURT BUILDING    ROOM # 204
2650 SO. CALIFORNIA AVE.
CHICAGO, ILLINOIS    60608

(9) THE HON. MICHAEL P. TOOMIN
CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT  CRIMINAL DIVISION
CRIMINAL COURT BUILDING    ROOM # 400
2650 SO. CALIFORNIA AVE.
CHICAGO, ILLINOIS    60608

(10) THE HON. MICHAEL P. BOLAN
CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT  CRIMINAL DIVISION
CRIMINAL COURT BUILDING    ROOM # 502
2650 SO. CALIFORNIA AVE.
CHICAGO, ILLINOIS    60608

 (DEFENDANTS CONTINUED)

NAMED DEFENDANTS

(11)   THE HON. FRED G. SURIA
       CIRCUIT COURT OF COOK COUNTY
       COUNTY DEPARTMENT   CRIMINAL DIVISION
       CRIMINAL COURT BUILDING   ROOM #
       2650 SO. CALIFORNIA AVE.
       CHICAGO, ILLINOIS   60608


(12)   THE HON. VINCENT M. GAUGHAN
       CIRCUIT COURT OF COOK COUNTY
       COUNTY DEPARTMENT   CRIMINAL DIVISION
       CRIMINAL COURT BUILDING   ROOM #
       2650 SO. CALIFORNIA AVE.
       CHICAGO, ILLINOIS   60608


(13)  THE HON. BERTINA E. LAMPKIN
       CIRCUIT COURT OF COOK COUNTY
       COUNTY DEPARTMENT   CRIMINAL DIVISION
       CRIMINAL COURT BUILDING   ROOM # 506
       2650 SO. CALIFORNIA AVE.
       CHICAGO, ILLINOIS   60608


(14)  THE HON. JOHN J. MORRISSEY
       CIRCUIT COURT OF COOK COUNTY
       COUNTY DEPARTMENT   CRIMINAL DIVISION
       CRIMINAL COURT BUILDING   ROOM # 700
       2650 SO. CALIFORNIA AVE.
       CHIAGO, ILLINOIS   60608


(15)   THE HON. DANIEL J. KELLEY
       CIRCUIT COURT OF COOK COUNTY
       COUNTY DEPARTMENT   CRIMINAL DIVISION
       CRIMINAL COURT BUILDING   ROOM # 702
       2650 SO. CALIFORNIA AVE.
       CHICAGO, ILLINOIS   60608

(DEFENDANTS CONTINUED)

NAMED DEFENDANTS:

(16)   THE HON. JOHN J. MORAN
       CIRCUIT COURT OF COOK COUNTY
       COUNTY DEPARTMENT   CRIMINAL DIVISION
       CRIMINAL COURT BUILDING    ROOM # 606
       2650 SO CALIFORNIA AVE.
       CHICAGO, ILLINOIS    60608

(17)   THE HON. JAMES M. SCHREIER
       CIRCUIT COURT OF COOK COUNTY
       COUNTY DEPARTMENT   CRIMINAL DIVISION
       CRIMINAL COURT BUILDING    ROOM # 704
       2650 SO. CALIFORNIA AVE.
       CHICAGO, ILLINOIS    60608

(18)   THE HON. COLLEEN McSWEENEY-MOORE
       CIRCUIT COURT OF COOK COUNTY
       COUNTY DEPARTMENT   CRIMINAL DIVISION
       CRIMINAL COURT BUILDING    ROOM # 706
       2650 SO. CALIFORNIA AVE.
       CHICAGO, ILLINOIS    60608

(19)   THE HON. DANIEL P. DARCY
       CIRCUIT COURT OF COOK COUNTY
       COUNTY DEPARTMENT   CRIMINAL DIVISION
       CRIMINAL COURT BUILDING    ROOM # (773) 869-3160
       2650 SO. CALIFORNIA AVE.
       CHICAGO, ILLINOIS    60608

(20)   THE HON. SHELVIN SINGER
       CIRCUIT COURT OF COOK COUNTY
       COUNTY DEPARTMENT   CRIMINAL DIVISION
       CRIMINAL COURT BUILDING    ROOM # H
       500 OLD ORCHARD RD.
       SKOKIE, ILLINOIS    60077

(DEFENDANTS CONTINUED)

NAMED DEFENDANTS:


(21) THE HON. JOHN J. MANNION
     CIRCUIT COURT OF COOK COUNTY
     COUNTY DEPARTMENT  CRIMINAL DIVISION
     CRIMINAL COURT BUILDING    ROOM # 107
     BRIDGEVIEW CIVIC CENTER
     10220 SO. 76TH AVE.
     BRIDGEVIEW, ILLINOIS


(22) THE HON. WILLIAM J. HIBBLER
     CIRCUIT COURT OF COOK COUNTY
     COUNTY DEPARTMENT  CRIMINAL DIVISION
     JUVENILE JUSTICE DIVISION
     1100 SO. HAMLIN AVE.    ROOM # 8004
     CHICAGO, ILLINOIS    60612


(23) THE HON. BARBARA J. DISCO
     CIRCUIT COURT OF COOK COUNTY
     RICHARD J. DALEY CENTER    ROOM # 1606
     500 RICHARD J. DALEY CENTER
     CHICAGO, ILLINOIS    60602



A COPY OF THE COMPLAINT IS ENCLOSED FOR "ALL NAMED DEFENDANTS",
AND SHOULD BE DELIVERED BY THE "U.S. MARSHALL'S SERVICE", IF SO
"ORDERED BY THE COURT", FOR "ALL NAMED DEFENDANTS".

# STATISTICS—HISTORICAL FACTS

SINCE THE ENACTMENT AND IMPLEMENTATION OF THE ILLINOIS HABITUAL CRIMINAL STATUTE; (ILL. REV STAT. CH. 38, PAR. 33B-1) IT HAS BEEN UTILIZED AGAINST A STARTLING NUMBER (DISPROPORTIONATE) OF AFRICAN-AMERICAN MALES AND OTHER MINORITIES.

(1)     Public Records Survey:
        Cook County Criminal Courts
        Kimberly Sutton-Brown
        University of Georgia, Atlanta.

A REVIEW OF 8723 CASES IN THE COOK COUNTY CRIMINAL COURTS REVEAL THE FOLLOWING:

(A)  If you are a "Minority Defendant" you are eight (8) times more likely than a "European-White Defendant" to be designated by the State's Attorney's Office as an Habitual Offender. And;

(B) If you are a "Minority African-American Defendant" you are five (5) times more likely then a "European-White Defendant" to be sentenced to "Natural Life" as an Habitual Offender.

FACT:  While the U.S. Supreme Court in "Batson" protects a defendant from racial discrimination during the jury selection process of a criminal trial;  Nothing protects a defendant during the far more vulnerable aggravation and mitigation phase of that process. Where the State's Attorney has unbridled discretion when selecting and seeking to have a criminal defendant declared an Habitual Offender.

The once openly racial or arbitrary discrimination in the "Criminal Justice System", is now incidiously hidden in VEILED UNCONSTITUTIONAL LEGISLATION, which directly or indirectly enhances penalties for minorities in a "Discriminatory and Impermissible" manner, while "European-White Males" are eight (8) times more likely not to be adjudged Habitual Offenders or sentenced to "Natural Life Imprisonment".

FACT_____: That the State Legislature has usurped powers of the judiciary that are mandated by the Supremacy Clause of the United States and Illinois Constitutions, and the Legislative, Executive and Judicial Branches by oath and affirmation, to support, Supremacy Clause States: Article VI., cl. (2)

"... Constitution, and the Laws of the United States" which shall be made in pursuance thereof, and all treaties made or which shall be made, under the authority of the United States, shall be the Supreme Law of the Land, and the "Judge" in every State shall be bound thereby, any thing in the Constitution or Laws of any State to the contrary not withstanding.

Article VI. cl. (3)

"The Senators and Representatives" before mentioned, and the Members of Several State Legislatures, and "all" Executive and Judicial Officers", both of the United States and of the Several States, shall be bound by oath and affirmation, to support this Constitution. See U.S. vs. Nixon , (1974) 418 U.S. 683, 94 S. Ct. 3090, 41 L. Ed. 2d 1039.

These "Principles" have been settled since; Marbury vs. Madison , (1803) 5 U.S. (1 Cranch) 137, 2 L. Ed. 60.

To enfoce the Constitution is imperative upon the "State Judges", in their official capacities... they are not to decide merely according to the laws or Constitution of the State, but according to the Constitution, Laws and Treaties of the United States... the Supreme Law of the land.

The "Supremacy Clause" establishes the primacy of the Federal Constitution, the provision of which overrides "all" conflicting law, as well as extralegal doctrines/legislation having "no constitutional basis or significance.

The Habitual Criminal Statute is such Legislation.

The Habitual Criminal Statute offends the United States Constitution, and the "Supreme Court of Illinois's" failure to invalidate this Statute has by its failure, exalted that Legislation to a position above the United States Constitution, and has allowed a Statute having no constitutional basis or significance to override the affirmative Constitutional Values of the United States of America.

# People v. Guzman:
# The Unconstitutionality
# of Illinois' Mandatory
# Life Imprisonment Statute

*The following is an argument in favor of declaring Illinois' mandatory life imprisonment statute repugnant to the Constitution of the state of Illinois and the Constitution of the United States.*

By Richard Kling and Gary Schwartz

Chapter 38, ¶ 1005, § 8-1(c) of the Illinois Revised Statutes mandates that if a defendant is found guilty of murdering more than one victim, the court shall sentence the defendant to a term of life imprisonment.

On January 13, 1983, Judge Earl Strayhorn of the Circuit Court of Cook County found defendant Luiz Guzman guilty of a double murder. Guzman was ineligible for the death penalty. On February 21, 1983, the court sentenced Guzman to 40 years' imprisonment — violating the legislative mandate. The defendant contended that:

1. Ch. 38, ¶ 1005, § 8-1(c) of the Illinois Revised Statutes is a usurpation of judicial authority and thereby violates articles II, IV, and VI of the Constitution of the state of Illinois.

2. A sentence of life imprisonment fixed upon this particular defendant violates both the cruel and unusual punishment clause of the eighth amendment and the due process and equal protection clauses of the fourteenth amendment to the United States Constitution.

3. Ch. 38, ¶ 1005, § 8-1(c) is in direct conflict with sentencing statutes ch. 38, ¶ 1005, § 3-1; ch. 38, ¶ 1005, §

3-2(a)(1), *et seq.*; ch. 38, ¶ 1005, § 4-1(a) and (b); and ch. 38, § 1-2(c) and (d); and violates article I, section 11 of the Illinois Constitution.

I. *Chapter 38, Paragraph 1005, Section 8-1(c) Constitutes a Usurpation of Judicial Authority and is Thereby in Violation of Articles II, IV and VI of the Constitution of Illinois*

To best articulate why this criminal statute violates the Illinois Constitution, it is necessary to draw an analogy between the federal and the state constitutions.

Article I, § 1 and article III, § 1, of the United States Constitution vest the federal legislative powers in the federal congress and the federal judicial powers in the federal judiciary. These provisions keep the branches of government separate — each with its own distinct functions.

Similarly, article III, § 1 and article VI, ¶ 1, of the Illinois Constitution vest the state legislative powers in the Illinois legislature and the state judicial powers in the state judiciary. In addition to creating the three branches of government, the Illinois Constitution provides in article II, § 1, that: "The legislative, executive, and judicial branches are separate. No branch shall

exercise powers belonging to another."

Prior to the adoption of the United States Constitution, courts exercised complete power in control of their procedure. With the adoption of federal statutes regulating judicial proceedings, the judiciary became subject to legislative restraints. The legislature usurped a part of the judicial rulemaking function.[1]

Just as federal statutes evolved to regulate federal judicial proceedings, the Illinois legislature adopted statutes to regulate the state judiciary.

In view of articles II, IV and VI of the Illinois Constitution, it can be argued that any statutory restraint placed on the judiciary by the legislature is unconstitutional. Still, there is merit to the judiciary's acquiescence to the legislative parameters imposed upon the courts for sentencing. These parameters impart a uniformity and promulgate the will of the people in judicial proceedings. Judicial discretion is not abused by these parameters and the system of checks and balances is in operation — assuring the foundation upon which the federal as well as the

---

1. Pound, *Regulation of Judicial Procedure by Rules of Court*, 10 ILL. L. REV. 1963.

state constitutions exist.

However, there must be a limit to which the legislative rules affecting the judiciary can be imposed. The separation of the powers of the executive, legislative and judicial branches of government is a basic precept of both the federal and the state constitutions. It is the undisputed duty of the courts to protect their own judicial powers from encroachment by legislative enactments and thus preserve an independent judicial system.[2]

In the present case, because defendant, Luiz Guzman, has been found guilty of the murder of two individuals, but not sentenced to death, ch. 38, ¶1005, §8-1(c) of the Illinois Revised Statutes requires that the court sentence him to imprisonment for natural life. These legislative provisions impose the sentence upon a defendant and thereby preclude the court from exercising any discretion in sentencing. It is the sentence of the legislature which is imposed, thus, usurping judicial discretion.

In all other types of criminal cases, the court uses its discretion to fix sentencing within legislative restrictions. In the case at bar, these parameters are so narrow that the court is divested of any real discretion in sentencing. Only maximum sentences can be ordered. Thus, in ordering such specific sentencing, the legislature is delegating judicial powers to its own branch of government.

In *People v. Montana*,[3] the Illinois Supreme Court reviewed certain amendments to the Illinois Parole Act which vested the power to change the maximum and minimum limit of duration of imprisonment in the Division of Corrections. In declaring the regulations unconstitutional, the court referred to *People v. Mallary*:[4]

> in the administration of criminal law of the state, there is no person outside the courts to authorize the punishment of persons for the crime of confinement in the penitentiary, and the Constitution expressly inhibits any person or collection of persons of one department of government from exercising any power properly belonging to either of the others.

In the instant case, ch. 38, ¶ 1005, § 8-1(c), strips from the judiciary all discretion in imposing sentence. It is the legislature which has fixed punishment in violation of the constitutional mandates separating the branches of government and prohibiting either

branch from exercising powers belonging to the other.

In *Harry Roberts v. Louisiana*,[5] the defendant was found guilty of first degree murder for killing a police officer. The defendant was sentenced to death under a Louisiana statute making the death penalty mandatory for intentionally killing a fireman or a peace officer. The United States Supreme

---

> *"It is the undisputed duty of the courts to protect their own judicial powers from encroachment by legislative enactments . . ."*

---

Court reversed the Louisiana Supreme Court's judgment insofar as it upheld the death penalty. The Court concluded that the particular statutes did not allow consideration of mitigating factors before imposing the mandatory legislative sentence.

In cases such as *Roberts'*, where the death penalty is considered, the trial court has the discretion to mitigate the sentence.[6] But in the case before the court here, where a maximum term of imprisonment is mandated, the court

is divested of discretion to mitigate the sentence, and must obey the legislative order and impose the prescribed sentence. Examination of mitigating factors is meaningless, since ch. 38, ¶ 1005, § 8-1(c) orders the court to sentence defendant to a term of imprisonment for natural life. By stripping the judiciary of discretion in imposing sentence, the statute usurps judicial authority, thereby violating articles II, IV, and VI of the Illinois Constitution.

II. *A Sentence of Life Imprisonment Fixed upon this Particular Defendant Violates the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution as well as the Due Process and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution*

The "cruel and unusual punish-

2. *Agran v. Checker Taxi Co.*, 412 Ill. 145, 105 N.E.2d 713 (1952).

3. *People v. Montana*, 380 Ill. 596, 44 N.E.2d 569 (1942).

4. *People v. Mallary*, 195 Ill. 582, 63 N.E. 508, 511 (1902).

5. *Harry Roberts v. Louisiana*, 431 U.S. 633, 97 S. Ct. 1993, 52 L. Ed. 2d 637 (1977).

6. *See* *Stanislaus Roberts v. Louisiana*, 428 U.S. 325, 96 S. Ct. 3001, 49 L. Ed. 2d 974 (1976); *Lockett v. Ohio*, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978); *Bell v. Ohio*, 438 U.S. 637, 98 S. Ct. 2977, 57 L. Ed. 2d 1010 (1978).





ABOUT THE AUTHORS

Richard S. Kling has a bachelor's degree from the University of Illinois and received his law degree from Northwestern University. He has worked as a caseworker for the Department of Public Aid and as a law firm librarian. He practiced law with the Cook County Public Defenders Office, and also spent a year in private practice of criminal law in Chicago. In 1981 he joined the faculty of IIT/Chicago-Kent Law School, where he teaches and practices law in Kent's Legal Service Center.

Gary H. Schwartz received his B.A. from the University of Illinois in 1972 and a Master of Arts from Northeastern Illinois University in 1975. He expects to receive his J.D. from IIT/Chicago-Kent in June, 1984. Prior to entering law school, Schwartz was an education specialist and also was an executive for Bell & Howell, Inc., and Movie Facts, Inc.

# People v. Guzman

ment" clause of the eighth amendment is directed in part "against all punishments which by their excessive length and severity are greatly disproportionate to the offense charged."[7]

In *Enmund v. Florida*,[8] a 1982 case, the Supreme Court held that the death penalty constituted cruel and unusual punishment in that the prosecution failed to prove the defendant had intent to kill. Defendant's participation in the alleged offense was limited to driving the escape vehicle after an armed robbery, in the course of which two people were slain. The Court noted that defendant himself did not intend to kill the decedents, nor did he anticipate the actual killing. In the absence of these aggravating factors, the Court concluded that a sentence of death constituted cruel and unusual punishment. Furthermore, the Court emphasized that in the past quarter of a century, individuals convicted of felony murder who were sentenced to death, killed or attempted to kill with intent.[9]

Many of the circumstances under which the Supreme Court found the penalty to be excessive in *Enmund* are similar to those in the *Guzman* case. Each defendant was charged with a double murder during the course of a felony, although there are differences in the degree of participation of each defendant in each case. Additionally, there are mitigating factors in each case which make the death penalty cruel and unusual punishment. So, too, the mandatory sentence of life imprisonment, without any possibility of parole, violates the eighth amendment to the United States Constitution.

In the Illinois case, Guzman admitted starting a fire in an apartment building. In his admission, it is quite clear that his sole intention was to scare his wife. He did not *intend* to harm his wife or any other resident of the building. Upon realizing the potential harm created by his conduct, he returned to the building hoping to extinguish the fire. Additionally, although the only direct evidence of Guzman's lack of intent is his admission, that evidence cannot be disregarded.[10] In fact, the court, in finding Guzman guilty, stated that the defendant lacked the intent to harm anyone.

These circumstances, like those in *Enmund*, demonstrate that Guzman should not automatically be categorized as one who, upon conviction, should be sentenced to the maximum prison term absent an investigation of mitigating circumstances. Mere application of the sentencing statute would prevent consideration of the variety of factors under which the defendant unintentionally caused the tragic results. Furthermore, it precludes any potential for rehabilitation.

The Supreme Court has repeatedly emphasized that when sentencing is imposed, it must focus on the unique circumstances of each case. In *Woodson v. North Carolina*,[11] the Supreme Court struck down the mandatory death penalty fixed upon Woodson. The Court stated:

> A process that accords no significance to relevant facts of the character and record of the individual offender or the circumstances of the particular offense excludes from consideration in fixing the ultimate punishment the possibility of compassionate mitigating factors stemming from the diverse frailties of mankind. It treats all persons of a designated offense not as uniquely individual human beings, but as members of a faceless undifferentiated mass to be subjected to blind infliction of the penalty of death.

Similarly, in *Stanislaus Roberts v. Louisiana*,[12] defendant was convicted of first degree murder for a killing which occurred during an armed robbery. He was sentenced to death under Louisiana's mandatory death sentencing statute. The Supreme Court reversed the Louisiana Supreme Court decision, pointing out mandatory death penalty statutes were unconstitutional in that they failed to focus on the circumstances of the particular offense and the character and propensities of the offender.[13]

Mandatory life sentencing statutes are no less constitutionally infirm than statutes mandating the death of death. As in *Woodson*, *Roberts* and *Enmund*, to require a life imprisonment sentence or the death penalty, would be to subject Guzman to a legislative scheme that permits inflicting the highest possible term of incarceration even if the defendant is found not to have intended to kill. This scheme also precludes consideration of substantial mitigating factors as to defendant's character and record. Under the applicable Illinois statutes, there is no possibility of mitigating the legislature's mandated life sentence. The court must be able to consider all mitigating factors as a constitutionally indispensible part of the process of imposing any sentence — especially one so severe as imprisonment for natural life.[14]

If ch. 38, ¶ 1005, § 5-1(c) and ch. 38, ¶ 9, § 1(b) were strictly enforced, Luiz Guzman would have been sentenced to a term of life imprisonment without any accounting of mitigating factors. Such sentencing constitutes cruel and unusual punishment and violates the eighth amendment of the United States Constitution as well as the due process and equal protection clause of the fourteenth amendment.

III. *Chapter 38, Paragraph 1005, Section 8-1(c) of the Illinois Revised Statutes is in Direct Conflict with Sentencing Statutes, Illinois Revised Statutes, Chapter 38, Paragraph 1005, Section 5-1, Chapter 38, Paragraph 1005, Section 3-2(a)(1), et seq., Chapter 38, Paragraph 1005, Section 4-1(a) and (b), Chapter 38, Paragraph 1-2(c) and (d); and Violates Article I, Section 11, of the Illinois Constitution*

The sentencing statutes of the Unified Criminal Code of Illinois state that defendants shall not be sentenced for a felony before a presentence investigation report is considered by the court.[15] The presentence report shall set forth pertinent historical facts

7. O'Neil v. Vermont, 144 U.S. 323, 339-40, 12 S. Ct. 693, 699-700 (1892).

8. Enmund v. Florida, 102 S. Ct. 3368, 73 L. Ed. 2d 1140 (1982).

9. *Id.*

10. *See,* People v. Liddell, 32 Ill. App. 3d 628, 366 N.E.2d 815 (1975).

11. Woodson v. North Carolina, 428 U.S. 280, 304, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976).

12. Stanislaus Roberts v. Louisiana, 428 U.S. 325, 96 S. Ct. 3001, 49 L. Ed. 2d 974 (1976).

13. *In accord:* Harry Roberts v. Louisiana, *supra* note 5. *See also,* Lockett v. Ohio, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978), where the Supreme Court stated that individual consideration is a constitutional requirement in imposing the maximum sentence. *See also,* Bell v. Ohio, 438 U.S. 637, 98 S. Ct. 2977, 57 L. Ed. 2d 1010 (1978).

14. *See,* People v. Devin, 93 Ill. 2d 326, 345-46, 444 N.E.2d 102, 67 Ill. Dec. 63 (1982).

15. Ill. Rev. Stat. ch 38, ¶ 1005, § 5-1.

about defendant.[16] A sentencing hearing is to be held to impose sentence.[17] Among the facts to be considered at the hearing are evidence from the trial, presentence reports and other evidence offered by the parties in aggravation and mitigation.[18] Furthermore, the sentence is to be imposed by the judge based on independent assessment.[19]

In the recent Illinois case of *People v. Youngbey*,[20] the court held that the mandates of the code sections mentioned above are to be strictly construed. These code sections set forth a mandatory but reasonable legislative requirement for the benefit of the defendant and the enlightenment of the court. In addition, the procedures provide the appellate court with the facts and arguments presented to the trial court, so that the appropriateness of a sentence can be reviewed upon a rational documented basis.

In the case of Guzman, if the legislative mandate of imposing life imprisonment were mandatorily followed, then a direct conflict would exist with the presentencing statutes. Illinois Revised Statutes ch. 38, ¶ 1005, § 8-1(c) demands life imprisonment; the procedural statutes demand reports and hearings to present mitigating factors.

It is clear from past decisions and from the various presentencing legislation that sentencing must be imposed with a view of compassion for the offender, as well as be an appropriate punishment in relation to the individual offender and the unique circumstances of each offense. It is inconsistent with judicial and legislative policies to mandate that Guzman be sentenced to a term of life imprisonment on the basis of a constitutionally unreasonable legislative scheme — a scheme which will not allow any consideration of individual facts and circumstances to appropriately impose his sentence.

In addition to the judicial and legislative conflict, the statute is repugnant to article I, section 2 of the Illinois Constitution which states that all penalties shall be determined both according to the seriousness of the offense and with an objective of restoring the offender to useful citizenship.

In *People v. Rickard*,[21] a 1981 Illinois case, defendant was convicted of a murder which occurred during an armed robbery. He was subsequently sentenced to 100 to 300 years in prison. The defendant contended that his sentence was excessively harsh and failed to comport with the constitutional objective of restoring the offender to useful citizenship. The appellate court noted that defendant had no prior criminal activity, that he was honorably discharged from service, and considered his age and educational and employment histories. Thus, his conviction was affirmed, but his sentence was vacated. The court concluded that the sentence imposed effectively negated any possibility of defendant's rehabilitation and was an abuse of discretion. The court also pointed out that usually, it is only in cases involving defendants with extensive prior felony histories that rehabilitative factors might not be emphasized in sentencing.[22]

In *People v. Viser*,[23] defendant contended that the consecutive sentences imposed of 199 to 200 years for murder, plus 10 to 20 years for attempted murder, were excessive. The court stated that such a sentence was unduly severe in view of the mitigating factor that the murder was not premeditated.

In the case of Guzman, the sentence inflicted under ch. 38, ¶ 1005, § 8-1(c), would not allow the court to weigh the defendant's life history. Nor would the court be allowed to consider his lack of intent to kill or harm. The statute renders meaningless any presentence investigation or hearing in aggravation and mitigation. Furthermore, as in *Rickard* and *Viser*, if the statute is strictly interpreted, it ignores the constitutional mandate of article I, section 11 of the Illinois Constitution that penalties be determined with an objective of restoring the offender to useful citizenship. Finally, the mandatory sentencing statute disregards the statutory requirements of ch. 38, §§ 1-2(c) and (d) which state respectively the penalties are to be prescribed proportionally to the seriousness of the offense and permit recognition of differences in rehabilitation possibilities among individual offenders; and that the court is to be prevented from arbitrary or oppressive treatment of persons accused or convicted of offenses.

To strictly construe the mandatory life sentence statute is inconsistent with judicial, legislative and constitutional policies which clearly complement each other in their interest to impose appropriate sentencing.

> "To strictly construe the mandatory life sentence statute is inconsistent with judicial, legislative and constitutional policies which clearly complement each other."

## Conclusion

Chapter 38, ¶ 1005, § 8-1(c) of the Illinois Revised Statutes mandates that a defendant such as Guzman be sentenced to a term of life imprisonment. Such a mandate violates the Illinois Constitution in that it usurps judicial authority by allowing the legislature to impose sentencing.

Moreover, in light of the facts of the Guzman case, a sentence of life imprisonment would constitute cruel and unusual punishment in violation of the eighth and fourteenth amendments to the United States Constitution. Such a sentence would not allow for a review of mitigation circumstances.

Finally, *Ill. Rev. Stat.*, ch. 38, ¶ 1005, § 8-1(c) is in direct conflict with the sentencing statutes,[24] because it renders any presentence investigation meaningless by mandating a specific sentence. It is also repugnant to article I, section 11, of the Illinois Constitution in that it imposes a sentence without a view toward rehabilitation of the defendant. ⌘

16. Ill. Rev. Stat. ch 38, ¶ 1005, § 3-2.
17. Ill. Rev. Stat. ch 38, ¶ 1005, § 4-1(a).
18. *Id.*
19. Ill. Rev. Stat. ch 38, ¶ 1005, § 4-1(b).
20. People v. Youngbey, 82 Ill. 2d 556, 413 N.E.2d 416, 45 Ill. Dec. 935 (1980).
21. People v. Rickard, 99 Ill. App. 3d 914, 425 N.E.2d 1317, 55 Ill. Dec. 144 (1981).
22. *See,* People v. Larsen, 74 Ill. 2d 348, 385 N.E.2d 679, 24 Ill. Dec. 538 (1979).
23. People v. Viser, 62 Ill. 2d 568, 343 N.E.2d 903 (1975).
24. Ill. Rev. Stat. ch 38, ¶ 1005, §§ 3-1, 3-2(a)(1), *et seq.,* and ch. 38, ¶ 1005, §§ 4-1(a) and (b) and ch. 38, §§ 1-2(c) and (d).

Chicago Sun-Times   Sunday, July 20, 1997

# habitual-offender law

## Penalty depends on crimes, timing

A person can commit dozens of crimes and never get a life sentence as a habitual criminal in Illinois. It all depends on the crime and the timing.

Illinois limits its "three-strikes-and-you're-out" law to people convicted of the most serious crimes: first-degree murder and Class X felonies such as attempted murder, armed robbery, armed violence, rape, home invasion, aggravated kidnapping for ransom or aggravated battery of a child.

Three convictions won't necessarily lead to a life sentence. It depends on when the crimes were committed.

If three crimes were committed at the same time or spread out over several days, the criminal gets only one strike. To get a second strike, the crime must be committed after the conviction for the first crime. The third strike can come only after conviction of a second crime.

Finally, the third crime must have been committed within 20 years of the first conviction. Time spent in prison doesn't count.

—*Tim Novak*



SUN-TIMES FILES

At Stateville Penitentiary and other Illinois prisons, the majority of inmates are African Americans.

for events that white folk would never get prosecuted for," said attorney Jed Stone, past president of the Illinois Attorneys for Criminal Justice. "The ultimate insult is to say with three of these you go away forever.

"The criminal justice system is race-based. The racism of the '90s is done with a smile, very politely, from men and women in three-piece suits with law degrees."

Cook County Circuit Judge Thomas Fitzgerald, who presides over the Criminal Division, said it is "tough" for anyone to qualify for a life sentence as a habitual criminal.

But he said it was "almost impossible" to explain why most have been black.

Chicago Sun-Times   Sunday, July 20, 1997

# METRO

# Blacks hardest hit by

## Experts cite racism

BY TIM NOVAK
STATE GOVERNMENT REPORTER

Fewer than 100 men are serving life sentences imposed since Illinois enacted a "three-strikes-and-you're-out" law nearly 20 years ago. And 90 percent are black.

Only nine of the state's 102 counties have had a criminal get the mandatory life sentence as a habitual criminal because it's so difficult to find anyone who qualifies under the punishment's complicated rules.

When the punishment has been imposed, it always has been against men, almost always African Americans, and particularly in Cook County, where 77 men—69 percent of them black—received the sentence.

State prisons also have 15 habitual criminals from eight other counties, including DuPage and Kane. Nine of those prisoners are black.

"This is really a gross disparity. I can't think of a logical explanation for this," said Jeffrey M. Shaman, a law professor at DePaul University.

"Statistics show racial minor-

ities commit more crimes, but they certainly don't commit all of the crimes. . . . At least part of the explanation for this is subtle racism."

Civil rights groups have criticized the death penalty as racist because the majority of Death Row inmates are black.

But the percentage of blacks who are sentenced as habitual criminals in Illinois is far greater than the percentage of blacks on Death Row; the latter percentage mirrors the overall prison population.

In Illinois, blacks make up 65 percent of the 36,000 prisoners, 64 percent of the 159 inmates on Death Row, and 90 percent of the habitual criminals.

"This is not a matter of selective prosecution," said Thomas E. Epach Jr., chief of criminal prosecutions for the Cook County state's attorney.

"These cases are generated by the offense and the criminal history of the individual. And it's mandatory sentencing.

"The defendant chooses the crime he wants to do. They choose their life's calling, whether it be . . . a stickup man or a rapist.

## HABITUAL CRIMINALS

Illinois has 92 prisoners serving life sentences as habitual criminals, meaning at least three convictions of the state's most serious felonies since the law took effect in 1978. By county and race:

| | BLACK | WHITE | HISPANIC |
|---|---|---|---|
| Cook County | 74 | 2 | 1 |
| DuPage County | 0 | 5 | 0 |
| Kane County | 1 | 0 | 0 |
| Downstate counties | 8 | 1 | 0 |

There have been no habitual offenders from Lake, McHenry or Will counties.

SOURCE: Illinois Department of Corrections          SUN-TIMES

These are all predators. Just like the defendant has made his decision, the statute has made the decision what will be done with him."

Armed robbery and rape are the most common crimes committed by the 92 habitual criminals in the state prison system.

Criminal justice experts were unable to explain why most of those sentenced as habitual criminals have been black, but they speculated that it involves several factors, such as race, poverty, a lack of education and the quality

of legal representation.

"Black people attract more attention from the police. It's exactly why the African-American community had a different view of what happened to O. J. Simpson than the white community did," said Jay Miller, executive director of the American Civil Liberties Union of Illinois.

Whites may be less likely to get a life sentence as habitual criminals because they tend to get more breaks, such as plea bargaining to a less serious crime, said Cook County public defender Rita Fry.

"More times than not, the suburban kid, more often the white kid, has mitigating factors that are presented to the court to give this kid a chance," Fry said. "The hammer more frequently comes down on the poor kid, who often happens to be the minority kid.

"Police have the discretion as to certain kind of offenses and how they handle them. The state's attorney's office makes a lot of decisions. Whether I like it or not, the reality is who gets arrested, who gets indicted and who gets charged tends to be African Americans and Hispanics."

The three-strikes law "ignores the reality that . . . young African-American males are apt to pick up early in life felony convictions . . .